## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEWSTARCOM HOLDINGS, INC., et al. | ) | Case No. 08-10108 (CSS) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| GEORGE L. MILLER, as Chapter 7 Trustee | ) | |
| Of the Estates of NewStarcom Holdings, | ) | |
| Inc., et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-50063 (CSS) |
| | ) | |
| AMERICAN CAPITAL, LTD., STEVEN | ) | |
| PRICE, GORDON O'BRIEN, MARK | ) | |
| FIKSE, CRAIG MOORE, MATCO | ) | |
| ELECTRIC CORP. f/k/a Matco Associates | ) | |
| Inc., RONALD BARBER, MARK FREIJI, | ) | |
| and KENNETH ELLIOTT, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

FLASTER GREENBERG
William J. Burnett
1000 N. West Street
Suite 1200
Wilmington, DE  19801

-and-

KAUFMAN, COREN & RESS, P.C.
Steven M. Coren
Douglas Evan Ress
Two Commerce, Suite 3900
2001 Market Street
Philadelphia, PA  19103

ASHBY & GEDDES, P.A.
Benjamin W. Keenan
500 Delaware Avenue
8th Floor
Wilmington, DE  19899

-and-

HINMAN, HOWARD &
KATTELL, LLP
Amy Shapiro
700 Security Mutual Building
80 Exchange Street
Binghamton, New York 13902-5250

Counsel for George L. Miller,                    Counsel for Matco Electric Corporation
Chapter 7 Trustee                                Ronald Barber, Mark Freije and Kenneth
                                                 Elliott


RICHARDS, LAYTON & FINGER, P.A.
Robert J. Stern, Jr.,
Robert C. Maddox
920 N. King Street
Wilmington, DE  19801

        -and-

ARNOLD & PORTER LLP
David B. Bergman
Laura K. D'Allaird
555 Twelfth Street, N.W.
Washington, D.C. 20004

Counsel for American Capital, Ltd,
Steven Price, Gordon O'Brien, Mark
Fikse and Craig Moore

Dated: March 8, 2016

J._____

## INTRODUCTION

The Court now rules on four related motions in this adversary proceeding.  The

plaintiff, George R. Miller, as Chapter 7 Trustee for the estates of NewStarcom

Holdings, Inc., et al. (the "*Trustee*"), claims that each defendant owed a fiduciary duty to

one or more of the Debtors, and each defendant either breached his own fiduciary

duties or assisted in another's breach of fiduciary duties.[1]  The Trustee seeks a ruling on

two motions: a motion to supplement the record and/or have the Court take judicial

---

[1]  *Trustee's Amended Complaint*, D.I. 43, pp. 18-27, ¶¶ 75-131.

2

notice of the Debtors' schedules[2] and a motion for reconsideration of the Court's earlier order[3] dismissing the Trustee's fraudulent transfer claims.[4]

There are nine defendants to this adversary proceeding—seven individuals and two corporate entities.  The individual defendants compose two distinct groups, based on their employment by one of the two aforementioned corporate entities.  The "ACAS Defendants"[5] have brought a motion to strike the expert report of the Brownstein Company, the Trustee's expert witness.[6]  The "New Matco Defendants"[7] seek summary judgment on the Trustee's claims that they breached their fiduciary duties or assisted the ACAS Defendants in breaches of fiduciary duties.[8]

The Court will grant the Trustee's motion to take judicial notice of the Debtors' schedules; the Debtors' schedules are an admissible adjudicative fact for which authenticity is not questioned.  The Court must make clear, however, that taking notice of the schedules does not establish as fact any attestations within them but only that a representative of the Debtors made, under penalty of perjury, those attestations.

---

[2]   *Trustee's Motion to Supplement Brief*, D.I. 192.

[3]   *Dismissal Order*, D.I. 71.

[4]   *Trustee's Reconsideration Brief*, D.I. 167.

[5]   American Capital, Ltd ("*ACAS*") held a majority equity stake in—and controlled—the Debtors prior to bankruptcy.  Steven Price ("*Price*"), Gordon O'Brien ("*O'Brien*"), Mark Fikse ("*Fiske*") and Craig Moore ("*Moore*") are current or former employees of ACAS who served as directors at one or more of the Debtors prior to bankruptcy.  *Trustee's Amended Complaint* at pp. 3-4, ¶¶ 6-11.

[6]   *ACAS Motion to Strike Brief*, D.I. 174.

[7]   Matco Electric Corporation ("*New Matco*") is an electrical contracting company founded and owned by Ronald Barber ("*Barber*"), Mark Freije ("*Freije*") and Kenneth Elliott ("*Elliot*").

[8]   *New Matco MSJ Brief*, D.I. 160.

The Court will deny the Trustee's motion for reconsideration. After a careful review of the record and prior hearings, the Court has come to several conclusions. First, the Court believes that the Trustee now asserts an entirely new fraudulent transfer claim, a claim that has never previously been presented to or dismissed by this Court. Second, even if the Court's earlier ruling dismissed this fraudulent transfer claim, the Trustee has failed to prove that new evidence or the concerns of justice warrant reconsideration. Third, the Trustee's delay in asserting this fraudulent transfer is unacceptable. Finally, the proper defendant for the Trustee's newly asserted fraudulent transfer is the "New Matco Stock Trust," a party the Trustee has never named as a defendant, and therefore the claim is improperly asserted in this proceeding.

The Court will grant, in part, the ACAS Defendants' motion to strike. The basic assertions of the ACAS Defendants are correct; the Brownstein Company's expert report contains improper legal conclusions and it is within the Court's power to strike the entire report. For three reasons, however, the Court will deny, in part, the motion to strike. First, the ACAS Defendants have not demonstrated that controlling authority requires the Court to strike the entire report. Second, because this adversary proceeding will not involve a lay jury, there is minimal concern that the report's improper legal conclusions will mislead the trier of fact. Third, only a small portion of the report contains improper legal conclusions; the vast majority of the report consists of relevant, admissible expert analysis. The Report's "Executive Summary" (pp. 5-7) will be struck in full. The Court will specifically ignore the improper legal conclusions in the "Analysis & Opinion" (pp. 81-95) section of the report and any other improper

legal conclusions in the report.  The Court finds that this course sufficiently protects the ACAS Defendants from prejudice, but refrains from throwing the baby out with the bathwater.

Finally, the Court will grant summary judgment to the New Matco Defendants on all claims.  At trial, the Trustee would bear the burden of proof and persuasion on his claims that the New Matco Defendants breached fiduciary duties to the Debtors or knowingly assisted the ACAS Defendants in breaching their own duties to the Debtors. The New Matco Defendants advance three substantive legal arguments in support of summary judgment: (1) any fiduciary duties they owed to the Debtors were extremely narrow in scope, (2) the "breaches" alleged by the Trustee did not fall within those narrow duties and (3) they did not "aid and abet" any breaches of fiduciary duties by the ACAS Defendants.  The New Matco Defendants further argue that the Trustee has failed to point to any evidence in support of several necessary elements of his claims and, therefore, the Court must grant summary judgment on those claims.

In response, the Trustee paints a vivid picture of the Debtors' descent in bankruptcy. The Court finds that the Trustee has demonstrated triable issues of fact on whether the **ACAS Defendants** breached their fiduciary duties to the Debtors.  Unfortunately for the Trustee, the **New Matco Defendants** are seeking summary judgment.  The Trustee's response to the request for summary judgment by these defendants is wholly inadequate.

First, the Trustee fails to specify the precise nature of each claim he asserts—he does not even identify which of his claims are for breach of the duty of care, and which are for the breach of the duty of loyalty.[9]  Second, the Trustee barely responds to the three core questions of law raised by the New Matco Defendants.   Third, the Trustee repeatedly fails to specify what specific actions by the New Matco Defendants constitute breaches of their fiduciary duties or "aiding and abetting" of breaches by the ACAS Defendants.   In the rare instances in which the Trustee makes a specific allegation, he offers almost no citation to the record.   And when he does cite to the record, he offers unreasonable interpretations and inferences from that evidence, and wholly fails to address countervailing evidence.   Finally, the Trustee wholly fails to offer any direct evidence that the New Matco Defendants "knowingly" aided and abetted breaches of fiduciary duty by the ACAS Defendants.

Because the Trustee would bear the burden of persuasion at trial, the New Matco Defendants are entitled to summary judgment if they demonstrate "that there is an absence of evidence to support the nonmoving party's case."[10]   As a result, the

---

[9]  And, to the extent he does, he is clearly wrong in differentiating the two.  *See Trustee's MSJ Brief*, D.I. 168 at pp. 31 and 43.  A fiduciary violates the duty of loyalty when he engages in self-dealing or self-interested behavior at the expense of the entity he is meant to be serving.  In contrast, a fiduciary violates the duty of care by performing his duties in a negligent or grossly negligent manner.  The Trustee claims that the ACAS Defendants violated their fiduciary duties by (1) selling at liquidation value instead of going concern value and (2) abdicating an active role in the sale process to Citizens Bank ("*Citizens*").  These are clearly claims based on a breach of the duty of care.  A claim based *solely* on the insufficiency of the price received is, by definition, a duty of care claim.  A claim based *solely* on the Director Defendants failure to engage in their "duty of oversight" is too, by definition, a duty of care claim.  The fact that the price was clearly insufficient, or that the directors failed be involved in the sale process, may serve as evidence for a duty of loyalty claim—but these facts cannot form the *basis* for a duty of loyalty claim.

[10]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

numerous defects in the Trustee's response are fatal to each and every one of his claims. The ability to weave a moving narrative is fundamental to effective advocacy—but a strong narrative does not mitigate the Trustee's burden of making specific legal arguments, supported by specific citation to the record, upon summary judgment. Because the Trustee fails to do so, summary judgment must be granted to the New Matco Defendants.

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a). This action is brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001.

## FACTUAL AND PROCEDURAL BACKGROUND

ACAS is a publicly traded private-equity firm, incorporated in Delaware, with its principal place of business in Bethesda, Maryland.[11] In 2003, ACAS acquired an 80% stake in NewStarcom Holdings, Inc. ("*NHI*"), the lead debtor in these cases.[12] The individual ACAS Defendants—Price, O'Brien, Fiske and Moore—were officers and

---

[11] *Trustee's Amended Complaint* at p. 3, ¶ 6.

[12] *Id.*

employees of ACAS, and served on the Boards of Directors of the Debtors prior to bankruptcy (the "*Director Defendants*").[13]

The Debtors had a simple corporate structure. NHI is a holding company that owns 100% of the equity in NSC Holdings, Inc. ("*NSC*").[14] NSC, in turn, held a 100% equity stake in three operating companies: Constar International, Inc. ("*Constar*"), Port City Electrical, Inc. ("*Port City*") and Matco Electric Corporation ("*Old Matco*").[15] Prior to bankruptcy, ACAS controlled the Boards of Directors of the Debtors and through their appointed directors, exerted total control over the companies.[16] NHI, NSC, Constar and Port City are the debtors in these administratively consolidated cases.[17]

Constar, Port City and Old Matco were electrical contractors operating in different geographic regions: Constar operated in and around Boston, Port City operated in the Carolinas and Old Matco operated in upstate New York.[18] The Director Defendants managed finances and most back-office operations centrally, while each operating subsidiary's managers had almost total control over the operational decision-making at their subsidiary. Thus, the operating subsidiaries were financially tied together, but were otherwise wholly independent of one another. The record provides a comprehensive picture of the structure and management of the NewStarcom entities.

---

[13]    *Id*. at pp. 3-4, ¶¶ 8-11.

[14]    *Id*. at p. 5, ¶ 17.

[15]    *Id*.

[16]    *Id*. at p. 5, ¶ 18.  The Debtors and Old Matco, collectively, are referred to as "NewStarcom."

[17]    *Id*. at p. 1, ¶ 1.

[18]    *Brownstein Company Export Report*, D.I. 174, Ex. A at p. 8.

The operating subsidiaries shared a chief financial officer. All three had their operating accounts at Citizens, while CNA Surety ("*CNA*") provided bonding for all three on a consolidated basis. The operating subsidiaries had very little control over their finances; each subsidiary received a weekly operating allowance after conference calls with the directors at NSC & NHI.[19] The Director Defendants routinely swept any excess or incoming cash upward to NSC & NHI.[20]

ACAS's ownership of NewStarcom was, in part, the result of a leveraged buyout; as a result, NHI and its subsidiaries were jointly and severally liable for a revolving $10 million credit agreement with Citizens.[21] This financial burden, however, was manageable for several years. Trouble began when Port City, as a result of overly optimistic bidding and cost overruns on several large construction projects, began hemorrhaging cash.[22] The Director Defendants attempted to secure additional funding for NewStarcom in August and September 2007, but were unsuccessful.[23] ACAS itself declined to make any further investments, as did CNA and Citizens.[24] On October 25, 2007, the Director Defendants advised Citizens that NewStarcom was insolvent; on

---

[19] *New Matco MSJ Brief* at pp. 6-7; *Towery Affidavit* at ¶¶ 5, 6, 14; *Shapiro Declaration* at Exs. C, V.

[20] *New Matco MSJ Brief* at pp. 6- 7.

[21] *Id*.

[22] *Trustee's Amended Complaint* at pp. 6-7, ¶¶ 22-25.

[23] *New Matco MSJ Brief* at p. 7.

[24] *Id*.

October 31st the ACAS Defendants shutdown Port City and Constar; and on November 5th, NewStarcom defaulted on an interest payment due to Citizens.[25]

Within days thereafter, the Director Defendants advised Barber that Old Matco would also be shutdown.[26]  Barber was understandably surprised; Old Matco was profitable, cash-flow positive and was constantly exceeding its own financial projections.[27]  Moreover, Old Matco had, days earlier on October 26th, accepted (and thereby obligated itself to perform) three additional public school jobs.[28]  The ACAS Defendants did not direct anyone at Old Matco to market the company,[29] but Barber expressed interest in purchasing the company himself.  The ACAS Defendants told Barber that he had two weeks to finalize an offer or Old Matco would be shutdown and included in the Debtors' bankruptcy filing.[30]

Simultaneously, Citizens moved aggressively to protect its interests.  It began sweeping cash from Old Matco's bank accounts continuously, which led to several checks bouncing, which in turn led to vendors to threaten to withhold goods, subcontractors to threaten to withhold services and project owners to threaten to withhold payment.[31]  A check to Old Matco's insurance company even bounced, which

---

[25]    *Id.* at p. 9,  ¶¶ 36-37

[26]    *Id.* at p. 9, ¶ 39.

[27]    *Id.* at p. 10, ¶¶ 40-43.

[28]    *Id. at* p. 8.

[29]    *Id.*

[30]    *Trustee's Amended Complaint* at p. 11, ¶ 47.

[31]    *New Matco MSJ Brief* at pp. 9-10.

nearly led to a total shutdown of operations.[32]   Barber—prior to having a fleshed out purchase agreement—issued a personal guarantee to CNA so that CNA would pay some $800,000 in employee and vendor claims and thereby keep Old Matco afloat.[33] Old Matco, despite being profitable and cash-flow positive, was now on the verge of collapse due to a lack of cash.

Citizens showed little interest in running an elongated sale process; it simply wanted to "recover as much money as possible as fast as possible."[34]   The ACAS Defendants played little role in the sale, and instead left the sales process almost entirely in Citizens' hands.[35]   Barber and Old Matco made their books and records available to Citizens and assisted a Citizens' consultant in reviewing them; Citizens did not express any questions or concerns regarding the adequacy or completeness of Old Matco's disclosure.[36]   After the APA was prepared, but prior to the sale's close, the ACAS Defendants dipped their fingers back into the sale and required that New Matco share ACAS's risk on an existing letter of credit issued in favor of CNA.[37]

Eventually, the sale closed for $2 million in cash and a number of additional terms.[38] Citizens received the cash and testified that this number exceeded the asset values

---

[32]   *Id.* at p. 9.

[33]   *Id.* at pp. 10-11.

[34]   *Id.* at p. 11 (citing *Shapiro Declaration* Exs. M, N, T).

[35]   *Trustee's Amended Complaint* at pp. 12-15, ¶¶ 52-65.  *New Matco MSJ Brief* at pp. 11-12.

[36]   *New Matco MSJ Brief* at p. 12.

[37]   *Id.* at pp. 12-13.

[38]   *Id.* at p. 13.  The additional terms—as stated by New Matco in its brief—were (1) a promissory note to CNA for the $882,127.11 in vendor claims CNA paid during Old Matco's financial instability, (2) Barber's personal guarantee of $990,600 on the three school jobs, (3) a $100,000 letter of credit in favor

substantially.[39]  Citizens has testified that it was happy with this deal because (1) Barber did not have a non-compete clause and could have simply "walk[ed] across the street and start Matco new without buying the assets," (2) Barber and New Matco were the only buyer "that CNA would have been comfortable with in November/December 2007" and (3) "[a]ll the customers and relationships are all owned by Barber."[40]

In November 2011, the Trustee filed his Amended Complaint against the ACAS Defendants and the New Matco Defendants.[41]   In February of 2012, the Defendants moved for dismissal[42] and, on May 24, 2012, the Court heard oral arguments on the motions to dismiss.[43]   After consideration, the Court granted the motion to dismiss, in part, and issued an order dismissing claims 4-8 of the Trustee's Amended Complaint.[44] In 2014, this Court issued a written opinion limiting the Trustee's discovery requests, on the grounds that New Matco's post-sale financial performance was of minimal relevance to determining if the Defendants breached their fiduciary duties leading up to and during the sale of Old Matco.[45]

---

of CNA, (4) Barber's personal agreement to provide $1,000,000 in indemnity to CNA for New Matco's bonded jobs, (5) assumption of liability for the $25 million of in-progress Old Matco projects, (6) a promise to retain all current employees for at least 60 days to comply with the WARN Act, 29 USC § 2102(a) and (6) the 50/50 cost-sharing split with ACAS on a letter of credit.

[39]   *Id*.

[40]   *Id*. at pp. 13-14; *Shapiro Declaration* Exs. P, T, U, V, W.

[41]   *Trustee's Amended Complaint*.

[42]   D.I. 49-52.

[43]   *Dismissal Hearing*, D.I. 204.

[44]   D.I. 71.

[45]   *In re NewStarcom Holdings, Inc.*, 514 B.R. 394, 404 (Bankr. D. Del. 2014).

## ANALYSIS

I. **Applicable Legal Standards Upon Summary Judgment**

  **A. Summary Judgment Standard**

Fed.R.Bank.P. 7056 makes Fed.R.Civ.P. 56 applicable to adversary proceedings in bankruptcy. Summary judgment is designed "to avoid trial or extensive discovery if facts are settled and dispute turns on issue of law."[46] The Court's aim upon summary judgment is "to isolate and dispose of factually unsupported claims or defenses"[47] in order to avert "full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways."[48]

Fed.R.Civ.P. 56(a) therefore requires the Court to grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant for summary judgment bears the initial burden of persuasion, and must point to an absence of evidence in support of the non-movant's case.[49] To defeat a well-supported motion for summary judgment, the movant must point to sufficient evidence that the trier-of-fact could reasonably find in their favor at trial.[50] More specifically, a "material fact" is one that might affect the outcome of the suit and a "genuine dispute" means that the evidence pointed to by the

---

[46] 11–56 MOORE'S FEDERAL PRACTICE, § 56.02 (Matthew Bender 3d ed.).

[47] *Celotex Corp.*, *supra*.

[48] *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991).

[49] *Celotex Corp.,* 477 U.S. at 323-325.

[50] *See Leonard v. General Motors Corp. (In re Headquarters Dodge),* 13 F.3d 674, 679 (3d Cir.1993); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

non-movant would allow a reasonable trier-of-fact to decide the "material fact" in the non-movant's favor.[51]

Evidence that "is merely colorable or is not significantly probative" cannot deter summary judgment.[52]  In response to a well-supported motion for summary judgment, "the non-moving party must adduce more than a mere scintilla of evidence in its favor"[53] and it cannot simply reassert factually unsupported allegations contained in its pleadings.[54]  In other words, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[55]  Finally, where there is a complete failure of proof concerning an essential element of the nonmoving party's case, Rule 56(c) necessarily renders all other facts immaterial and mandates a ruling in favor of the moving party.[56]

## B.  Breach of Fiduciary Duty

A claim for breach of fiduciary duty "requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty."[57]  In Delaware,

---

[51]  *See Mesnick,* 950 F.2d at 822 ("'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law").  *See also Leonard*, 13 F. 3d at 679; *Matsushita*, 475 U.S. at 586-87.

[52]  *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989);  *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[53]  *Anderson*, 477 U.S. at 249–50. *See also In re CVEO Corp.,* 327 B.R. at 213.

[54]  *See, e.g., Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

[55]  *Matsushita,* 475 U.S. at 586.

[56]  *In re Broadstripe, LLC,* 444 B.R. 51, 76 (Bankr. D. Del. 2010) (*citing Celotex Corp.,* 477 U.S. at 317).

[57]  *Beard Research, Inc. v. Kates,* 8 A.3d 573, 601 (Del. Ch.), *aff'd sub nom., ASDI, Inc. v. Beard Research, Inc.,* 11 A.3d 749 (Del. 2010).

directors "owe two fiduciary duties—care and loyalty."[58]    The duty of care requires that directors "use the amount of care which ordinarily careful and prudent [persons] would use in similar circumstances and consider all material information reasonably available in making business decisions."[59]    To establish a breach of the duty of care, a claimant must prove a director's actions were "grossly negligent."[60]    The duty of loyalty requires that "the best interest of the corporation and its shareholders take precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."[61]    The requirement to act in good faith is "a subsidiary element, *i.e.,* a condition, of the fundamental duty of loyalty."[62]

Although most cases on fiduciary duty deal with directors, the Delaware courts have stated that the fiduciary duties of officers are the same as directors.[63]    However, the scope of an officer's duties is limited to the officer's sphere of authority; e.g., the Court may not hold an officer responsible for his firm's financial decisions when that officer had no hand in making those decisions.[64]    As one court explained, "Delaware corporate decisions consistently have looked to who wields control in substance and

---

[58]    *In re Orchard Enterprises, Inc. Stockholder Litig.*, 88 A.3d 1, 32-33 (Del. Ch. 2014) (internal citations omitted).

[59]    *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch.2005).    *See also Graham v. Allis-Chalmers Mfg. Co.*, 41 Del. Ch. 78, 84, 188 A.2d 125, 130 (1963).

[60]    *In re Walt Disney*, 907 A.2d at 749.

[61]    *Id.* at 751.

[62]    *In re Orchard*, 88 A.3d at 32-33 (quoting *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006)).

[63]    *See Gautler v. Stephens*, 965 A.2d 695, 708-709 (2009).

[64]    *See In re Ultimate Escapes Holdings, LLC*, 2014 Bankr. LEXIS 4712, at *17 (Bankr. D. Del. Nov. 12, 2014); *Miller v. McDonald (In re World Health Alternatives, Inc.)*, 385 B.R. 576, 591-593 (Bankr. D. Del. 2008).

have imposed the risk of fiduciary liability on the actual controllers."[65]  This emphasis on actual control extends to the parent-subsidiary context; the directors of a wholly owned subsidiary have no duty "to second-guess the business judgment of its parent corporation when... supporting the parent's strategy would not violate any legal obligation the *subsidiary* owes to another."[66]

Delaware has also developed a substantial corpus of law on the fiduciary duties implicated in a sale of corporate control.  First and foremost, "in a sale of corporate control, the responsibility of the directors is to get the highest value reasonably attainable for the shareholders."[67]  Under Delaware law, the board of directors must approve any sale that disposes of substantially all of the corporation's assets.[68]  However, when the shareholders of a corporation have a fair opportunity to approve—or disapprove—a sale, ex-post judicial review is heavily limited.[69]  Directors and

---

[65]  *Virtus Capital L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *17 (Del. Ch. Feb. 11, 2015) (internal citations omitted).

[66]  *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 201 (Del. Ch. 2006) (emphasis added); *See also Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) (stating that "in a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders").

[67]  *Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 46 (Del. 1994) (further stating that this duty is triggered when a corporation initiates an active bidding process or "seeks an alternative transaction involving the breakup of the company").

[68]  8 Del. C. § 271; *In re Bally's Grand Derivative Litig.*, 1997 Del. Ch. Lexis 77, at *12-15 (Del. Ch. June, 4 1997).

[69]  *See In re Gen. Motors Class H Shareholders Litig.*, 734 A.2d 611, 616 (Del. Ch. 1999) ("Because the shareholders were afforded the opportunity to decide for themselves on accurate disclosures and in a non-coercive atmosphere, the business judgment rule applies, and the plaintiffs must, to avoid dismissal, plead that the Hughes Transactions were wasteful"); *See also Marciano v. Nakash*, 535 A.2d 400, 405 n. 3 (Del. 1987) ("approval by fully informed ... disinterested stockholders ... permits invocation of the business judgment rule and limits judicial review to issues of gift or waste with the burden of proof upon the party attacking the transaction").

officers have a heavy duty of disclosure,[70] a duty that grows heavier when the director or officer has a conflict of interest.[71]    What "typically drives a finding of unreasonableness is evidence of self-interest, undue favoritism or disdain towards a particular bidder, or a similar non-stockholder-motivated influence that calls into question the integrity of the process."[72]

### C.  Aiding and Abetting a Breach of Fiduciary Duty

A claim of aiding and abetting a breach of fiduciary duty has three elements: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) knowing participation in that breach by a party not in direct fiduciary relationship.[73]  "Knowing participation" requires a showing that the defendant both (1) participated in the breach and (2) knew at the time that the conduct assisted constituted a breach of fiduciary duty.[74]  To "establish *scienter,* the plaintiff must demonstrate that the aider and abettor had 'actual or constructive knowledge that their conduct was legally improper.'"[75]

---

[70] *Potter v. Pohlad*, 560 N.W.2d 389, 394 (Minn. Ct. App. 1997) (applying Delaware law).  *See also Science Accessories Corp. v. Summagraphics Corp.,* 425 A.2d 957, 962 (Del. 1980) (an agent has the "duty to disclose information that is relevant to the affairs of the agency entrusted to him"); *cf. Mills Acquisition Co. v. Macmillan, Inc.,* 559 A.2d 1261, 1280 (Del. 1989) (corporate directors have duty to disclose "all material information" when seeking shareholder approval).

[71] *In re Wayport, Inc. Litig.,* 76 A.3d 296, 314 (Del. Ch. 2013) (stating that when there is a conflict of interest, directors and officers have a duty "to disclose all facts that are material to the stockholders' consideration of the transaction and that are or can reasonably be obtained through their position as directors").

[72] *In re Del Monte Foods Co. Shareholders Litig.*, 25 A.3d 813, 831 (Del. Ch. 2011).

[73] Ronald A. Brown, Jr., *Claims of Aiding and Abetting A Director's Breach of Fiduciary Duty-Does Everybody Who Deals with A Delaware Director Owe Fiduciary Duties to That Director's Shareholders?,* 15 Del. J. Corp. L. 943, 947 (1990) (quoting *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984), *aff'd,* 575 A.2d 1131 (Del. 1990)).

[74] *Malpeide v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

[75] *RBC Capital Markets, LLC v. Jervis*, 2015 WL 7721882, at *33 (Del. Nov. 30, 2015)

In the context of a sale, "a bidder's attempts to reduce the sale price through arm's-length negotiations cannot give rise to liability for aiding and abetting."[76]  If, however, the bidder "create[s] or exploit[s] conflicts of interest in the board" or conspires with board, aiding and abetting liability is possible.[77]  This rule is derivative of the general principle that a third party is not liable for aiding and abetting another's breach of the duty of care unless the third party "purposely induced the breach of the duty of care."[78]

### D. Combining the Procedural and Substantive Law

Because the Court is reviewing a motion for summary judgment, a proper understanding of the interaction between the procedural law on summary judgment and the substantive law on fiduciary duties is necessary.  Although the Trustee's briefing paints a disturbing picture of the events leading up to the Debtors' bankruptcy filing, that broad picture is irrelevant to this motion for summary judgment.  In order for his claims against the New Matco Defendants to survive summary judgment, the Trustee must point to specific, admissible facts in the record that would allow the Court to find, at trial, that the Trustee has carried his burden of persuasion and production on each element of his claims.

---

[76]   *Malpeide* at 1097-98.

[77]   *Id.*

[78]   *In re Rural Metro Corp.*, 88 A.3d 54, 97 (Del. Ch.), *decision clarified on denial of reargument sub nom., In re Rural Metro Corp. Stockholders Litig.* (Del. Ch. Mar. 19, 2014), and, *appeal dismissed sub nom., In re Rural Metro Corp. Shareholders Litig.*, 105 A.3d 990 (Del. 2014); *see also Goodwin v. Live Entm't, Inc.*, 1999 WL 64265, at *28 (Del. Ch. Jan. 25, 1999), *aff'd*, 741 A.2d 16 (Del. 1999).

### 1. Breach of fiduciary duty.

At trial, the Trustee would bear the burden on both the existence of a duty and its breach. At summary judgment, the existence of a fiduciary duty is a mixed question of law and fact, and requires several steps to analyze. First, the Court must ask a factual question—what was the nature of the relationship between the defendant and the Debtors? Second, based on the facts found, the Court then answers a question of law—does Delaware law provide that, because of his relationship to the Debtors, the defendant owed them fiduciary duties? Finally, whether a defendant's actions breached his fiduciary duties is primarily a question of fact.

### 2. Aiding and abetting a breach of fiduciary duty

At trial, the Trustee would bear the burden of proving all three elements of this claim. First, the Trustee would need to prove the existence of a fiduciary relationship between the ACAS Defendants and the Debtors. Second, the Trustee would need to prove that an ACAS Defendant breached his fiduciary duty to the Debtors. Finally, the Trustee would need to prove that a New Matco Defendant "knowingly participated" in that breach. The New Matco Defendants have not disputed the first two elements.

When considering the third element—knowing participation—at the summary judgment stage, the Court is asking two questions of fact: (1) did a New Matco Defendant know that he was aiding an ACAS Defendant in a breach of the ACAS Defendant's duty and (2) did the New Matco Defendant actually "aid or abet" that breach of duty?

### 3. On whose behalf may the Trustee assert claims?

Finally, the Court agrees with the New Matco Defendants that the Trustee may only assert claims held by the Debtors.[79]  Although the powers of the Trustee are wide in scope, he has no power to assert fiduciary duty claims on behalf of Citizens, CNA or NewStarcom's trade creditors.[80]

## II. The Court Will Grant Summary Judgment on the Breach of Fiduciary Duty Claims

In his Amended Complaint, the Trustee alleges only two breaches of fiduciary duty by the New Matco Defendants: (1) "facilitating and participating in New Matco's purchase of Old Matco…" and (2) "facilitating and participating in a side deal to minimize ACAS's exposure under the Letter of Credit."[81]  The Court's inquiry is therefore limited to whether these two actions were a breach of any fiduciary duty owed by the New Matco Defendants to the Debtors.  The Court agrees with the New Matco Defendants that the Trustee's claims are barely sufficient to survive a motion for judgment on the pleadings because they are vague, conclusory and barely inform each

---

[79]  *New Matco MSJ Brief* at p. 25.

[80]  *See Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 428-435, 92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972) (stating that the Trustee "does not have standing to sue an indenture trustee on behalf of debenture holders); *Marion v. TDI Inc.*, 591 F.3d 137, 148 n. 15 (3d Cir. 2010).  This is not to say that the Trustee has no recourse if the Debtors were harmed when the New Matco Defendants breached their duties to a non-debtor.  *C.f. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 348-58 (3d Cir. 2001) (finding that the Debtors had suffered a cognizable injury under PA law when the defendants "wrongfully expand[ed] the Debtors' debt out of all proportion of their ability to pay and therefore was not asserting claims on behalf of creditors) (disapproved of by *Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP*, 605 Pa. 269, 989 A.2d 313 (2010)).  Such a claim, however, would need to be brought under applicable state law.  Because the Trustee only brings claims based on fiduciary duties owed to the Debtors, the Court may not consider other state law claims that might provide redress.

[81]  *Trustee's Amended Complaint* at p. 22, ¶ 94(a-b).

individual defendant of what "wrongful" acts he committed.[82]  Because the New Matco

Defendants need only show that "there is a complete failure of proof concerning an

essential element of" the Trustee's claims, the Trustee's claims will not survive

summary judgment unless the Trustee can specifically point to a genuine dispute of

material fact on each element of his claims.  The Trustee has failed to do so and,

therefore, the Court will grant summary judgment on all breach of fiduciary duty

claims.

### A. The New Matco Defendants Did Not Breach Any Fiduciary Duty to the Debtors By Agreeing to Share ACAS's Risk on the Letter of Credit.

The Court is compelled to grant summary judgment in favor of the New Matco

Defendants on the claim that the New Matco Defendants breached a fiduciary duty to

the Debtors by agreeing to share ACAS's risk on a letter of credit.  First, from a lack of

discussion in his briefing, it appears that the Trustee has totally abandoned this claim;

as a result, the Court finds there is a total absence of evidence to support it.  Moreover,

although the New Matco Defendants did not specifically address this claim in their

briefing, their broader arguments show that they are entitled to judgment as a matter of

law.

The Trustee's briefing on this claim is so insufficient that Court finds that further

consideration is unwarranted.  The Trustee has not identified whether the New Matco

Defendants' participation on the letter of credit was a breach of loyalty, or of due care.

The Trustee has not identified to whom the New Matco Defendants owed any duty.

---

[82] *New Matco MSJ Brief* at p. 23, n. 4.

The Trustee has not offered an explanation as to how this deal harmed the Debtors. Because the Trustee's memorandum in opposition to summary judgment—literally—does not mention this claim,[83] the Court finds it proper to assume that the Trustee has abandoned the claim.

### B. The New Matco Defendants Did Not Breach Any Fiduciary Duty to the Debtors By Purchasing Old Matco and Its Assets.

The New Matco Defendants are also entitled to summary judgment on the Trustee's claim that they violated fiduciary duties by purchasing Old Matco. Again, the Trustee has failed to make specific arguments on what fiduciary duty, owed to whom, the New Matco Defendants violated. Nonetheless, from the Trustee's pleadings, the Court has inferred two specific claims. First, the Trustee believes that the New Matco Defendants owed a duty of disclosure to Citizens, and violated that duty by "refus[ing] to set the record straight" regarding Old Matco's value.[84] Second, the Trustee believes that by "taking advantage of a thoroughly corrupt sale process," the New Matco Defendants violated their duty of loyalty to NewStarcom.[85]

### 1. The Trustee may not assert a breach of fiduciary duty claim held by Citizens.

As previously addressed by the Court, the Trustee does not have standing to assert claims on behalf of Citizens. To the extent the New Matco Defendants' had and violated a duty of disclosure to Citizens and that breach harmed the Debtors, the

---

[83] The Court has reviewed the *Trustee's MSJ Brief* several times and is not exaggerating. The brief contains zero (0) mentions of this claim or of the agreement by New Matco to share exposure on ACAS's letter of credit with CNA. *See Trustee's MSJ Brief*, pp. 1-49.

[84] *Trustee's MSJ Brief* at p. 35.

[85] *Id.* at p. 40.

Debtors' injury cannot be redressed by a breach of fiduciary claim. As a result, the Court will grant summary judgment on this particular breach of fiduciary duty claim. If the New Matco Defendants did mislead Citizens, and this assisted the ACAS Defendants in breaching their fiduciary duties to the Debtors, this may be the basis for an aiding and abetting claim. The Court analyzes this theory below.

### 2. The New Matco Defendants owed, at most, a narrow fiduciary duty to NewStarcom and did not violate that narrow duty by purchasing Old Matco.

Finally, the Court addresses and finds wanting the Trustee's heftiest claim—that by purchasing Old Matco, the New Matco Defendants violated their duty of loyalty. But even if the Court assumed that the ACAS Defendants violated their fiduciary duties during the sale, there are no grounds for such a finding against the New Matco Defendants. First, there is no smoking gun—no direct evidence of collusion or bad faith negotiation between the New Matco Defendants and the ACAS Defendants. Second, it was Citizens who negotiated the sale price with the New Matco Defendants, at arms-length, and there is no evidence New Matco misled Citizens. Third, the only fiduciary duties the New Matco Defendants owed NewStarcom were as managers of an NSC subsidiary. These duties do not include the duty to ensure their parent corporation receives the highest price possible when selling the subsidiary. As managers, their duty was to maximize the value of Old Matco through faithful stewardship of the company, and the record clearly shows they fulfilled this duty—it was the actions of NewStarcom and Citizens that put Old Matco at risk.

Fiduciary law is designed to prevent fiduciaries from "us[ing] their position of trust and confidence to further their own interests."[86]   As a result, fiduciary law heavily scrutinizes dealings between the fiduciary and the entity he owes his duty to, to prevent the fiduciary from using his control of an entity to profit himself.   The paradigmatic example of a breach of fiduciary duty is when the fiduciary sits on both sides of the table during a deal or sale and appears to have profited at the expense of the entity he owed a duty to.   But that concern simply isn't present here; the New Matco Defendants had no power to authorize the sale of Old Matco.   They sat on one side of the table, not both.   As the managers of Old Matco, they were clearly in a privileged position, information-wise.   But there is no evidence they misled NewStarcom or Citizens on the state of Old Matco, nor that they tampered with or withheld business records.   In fact, they did not even use the threat of leaving Old Matco as a bargaining chip, though they may well have been entitled to.[87]   Because there is no basis in evidence or law for the Trustee's claim, the Court will grant summary judgment to the New Matco Defendants.

---

[86]   *Gluth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939).

[87]   The record is clear that Barber, Freije and Elliot did not have non-competes in their contract.   The Court is not certain whether it would be a breach of fiduciary duty if they had used a threat to leave during negotiations to buy Old Matco.   That question, however, is irrelevant; there is no evidence they actually threatened to leave and thereby coerced a lower price from Citizens.   The record only shows that Citizens was aware of the lack of non-compete clauses in their contracts and, therefore, any other buyer would likely refuse to purchase Old Matco unless it was sure that the managers would stay.

III. **The Court Will Grant Summary Judgment on the Aiding and Abetting Breach of Fiduciary Duty Claims.**

In his Amended Complaint, the Trustee alleges ten breaches of fiduciary duty by all named Defendants.[88]  The Trustee further alleges that the New Matco Defendants aided and abetted each of these breaches of fiduciary duty by the ACAS Defendants.[89]  As the Court previously noted, the Trustee would bear the burden of proof on these claims at trial.  Thus, the Court should grant the New Matco Defendants summary judgment if there is a complete absence of evidence in support of a necessary element of the Trustee's claim.  Applying this procedural standard in concert with the substantive law of aiding and abetting, the Court finds that two questions are dispositive of each of the Trustee's claims.  First, has the Trustee pointed to evidence that the New Matco Defendants "aided" or "abetted" the ACAS Defendants?  Second, has the Trustee pointed to evidence that the New Matco Defendants aided or abetted the ACAS Defendants "knowingly?"

The Court finds that Trustee has completely ignored the context of its aiding and abetting claims against the New Matco Defendants.  The New Matco Defendants only became aware of NewStarcom's financial problems in November of 2007,[90] when NewStarcom and Old Matco were already in dire financial condition.[91]  The Trustee's claims against the ACAS Defendants extend far further back in time, and the Trustee

---

[88]  *Trustee's Amended Complaint* at pp. 19-20, ¶¶ 87.

[89]  *Id.* at p. 22, ¶¶ 97-99.

[90]  *New Matco MSJ Brief* at p. 9, ¶ 39.

[91]  *Id.* at p. 9, ¶¶ 36-37

has a colorable claim that a thorough sale process could have occurred prior to October 2007 and that by not engaging in such a process, the ACAS Defendants breached their fiduciary duties.[92]   But the context in which the Court judges the actions of the New Matco Defendants is quite different—they played no role in creating the crisis that led to NewStarcom's bankruptcy, were not even aware of this crisis until it had put Old Matco in danger and entered into the process with a single known fact—that unless they purchased Old Matco, it would be shut down and included in the bankruptcy filing.

With that context in mind, the Trustee has clearly failed on all of his aiding and abetting claims.  The Trustee relies almost exclusively on the fact that the New Matco Defendants "facilitated" the ACAS Defendants by purchasing Old Matco.  But, given the context in which the New Matco Defendants entered the scene, mere facilitation is not enough.  To survive summary judgment, the Trustee must point to evidence supporting one of two conclusions: that the New Matco Defendants *actually* knew that the ACAS Defendants were committing a breach of fiduciary duty or that the ACAS Defendants' actions were so egregious that the New Matco Defendants had constructive knowledge they were aiding or abetting a breach of fiduciary duty.  Because the Trustee has failed to show either, summary judgment will be granted on all aiding and abetting claims.

---

[92] The Court makes no specific finding of fact on this claim, other than that such a claim is sufficient to withstand dismissal under Fed. R. Civ. P.  12(b)(6).

### A.  Narrowing Down the Trustee's Claims

Three breaches alleged by the Trustee involve actions or choices that made by the ACAS Defendants before they first told the New Matco Defendants of NewStarcom's distress.[93]  Because there is no basis for finding that the New Matco Defendants aided or abetted these actions and decisions by ACAS, the Court must grant summary judgment on claims (b), (h) and (i).  Claims (a), (d) and (e) involve the New Matco Defendants, but only indirectly.[94]  Finally, claims (c), (f), (g) and (j) involve direct dealings between the ACAS Defendants and the New Matco Defendants.[95]  Of these, claims (f) and (g) create identical aiding and abetting claims, and are therefore merged.

### 1.  Claims (f) and (g) only create a single aiding and abetting claim, which in reality is a direct claim for breach of fiduciary duty.

Claims (f) and (g) both assert a breach of fiduciary duty based on ACAS requesting New Matco to share the risk on a letter of credit ACAS had issued to CNA and New Matco agreeing to the same.  Based on their wording in the Complaint, claim (f) states a

---

[93]  Specifically "(b) [c]hoosing to shut down Old Matco… (h) [f]ailing to consider the offer for Constar and choosing instead to shut down… and (i) [a]bruptly closing Constar and Port City without having first made any attempt to responsibly wind down operations…"  *Trustee's Amended Complaint* at p. 20, ¶ 87.  Each of these claims involves an alleged breach of the duty of care, and in each claim, the decisions and actions that the Trustee alleges were a breach of fiduciary duty were made by the ACAS Defendants before the New Matco Defendants were even informed of NewStarcom's financial troubles.

[94]  Specifically, "(a) [f]ailing to market Old Matco for sale," (d) abdicating their responsibility to play a meaningful role in the determination of the sale price for Old Matco…" and "(e) imposing an unreasonably short deadline for finalizing a sale of Old Matco when there was no legitimate business reason for such an emergency 'fire sale…'"  *Id.*  In regards to these claims, the New Matco Defendants were not directly involved with the ACAS Defendants' actions, but through their dealings with Citizens, may have "facilitated" those actions.

[95]  Specifically, "(c) [s]elling Old Matco to insiders… with first ascertaining the fair market value of the company… (f) [s]elling Old Matco quickly to insiders… not because it was in the best interests of creditors, but because ACAS… cared only to minimize its exposure… (g) [c]utting a side deal to minimize ACAS's exposure under the Letter of Credit… and (j) [e]xposing the Debtors to potential liability in connection with the WARN Act claims."  *Id.*

breach of fiduciary duty claim against the New Matco Defendants, while claim (g) states a breach of fiduciary duty claim against the ACAS Defendants. The Court has already stated it will grant summary judgment in favor of New Matco on the breach of fiduciary duty claim.

### 2. There is absolutely no basis for finding aiding and abetting liability on claims (b), (d), (e), (h), (i) and (j).

The Court will grant summary judgment on claims (b), (d), (e), (h), (i) and (j). Claims (b), (h) and (i) allege breaches of fiduciary duty by the ACAS Defendants that occurred well before the New Matco Defendants became involved and the Trustee has introduced no evidence that would support finding aiding and abetting liability on these claims. Claims (d) and (e) allege breaches of the ACAS Defendants' duty of care, and, therefore, the New Matco Defendants are only liable for aiding and abetting if they "purposefully induced the breach of the duty of care."[96] The Trustee has not pointed to any evidence to support an inference that the New Matco Defendants induced the ACAS Defendants into "(d) abdicating their responsibility to play a meaningful role" in sale of Old Matco or "(e) imposing an unreasonably short deadline for finalizing a sale of Old Matco." Finally, Claim (j) alleges that the ACAS Defendants breached their fiduciary duties by "exposing the Debtors to potential liability" under the WARN Act. Because the New Matco Defendants played no role in the closing of Constar and Port City and in their purchase of Old Matco expressly agreed[97] that New Matco would

---

[96] *See* n. 78, *supra.*

[97] *New Matco MSJ Brief* at pp. 12-13.

make no layoffs that would create WARN Act liability,[98] the Court will grant summary judgment on this claim.

### 3. On claims (a), (c) and (d)—all based on the sale of Old Matco—the Trustee fails to point to evidence showing that the New Matco Defendants "knowingly aided or abetted" the ACAS Defendants.

Three remaining claims are based on the sale of Old Matco to the New Matco Defendants.  The Trustee properly plead these as three separate fiduciary duty claims against the ACAS Defendants: claim (a) asserts that the ACAS Defendants failed in their duty of care by failing to market Old Matco at all; claim (c) asserts that the ACAS Defendants breached their duty of care by agreeing to sell Old Matco without first engaging in some process for determining its fair market value; and claim (d) asserts that the ACAS Defendants violated their duty of loyalty by knowingly selling Old Matco at a low price so that New Matco would agree to share ACAS's exposure on a letter of credit.[99]  As previously stated, the New Matco Defendants do not contest the underlying breach of fiduciary duty claims against ACAS.  As a result, the Court's inquiry is restricted to whether the New Matco Defendants knowingly aided or abetted the ACAS Defendants.

The Court finds it proper to analyze these claims together; actions by the New Matco Defendants that "aid" or "abet" one of these claims almost certainly "aids" or "abets" the other two claims.  Because the Trustee has wholly failed to introduce evidence that

---

[98]   The Trustee has introduced no evidence that New Matco violated the terms of the agreement and made layoffs that would create WARN Act liability for the Debtors.

[99]   Because NewStarcom was insolvent at the time of the sale, an orderly liquidation would have resulted in no recovery by ACAS.  New Matco's agreement to share the risk on a letter of credit issued by ACAS to CNA, however, provided no benefit to Citizens or unsecured creditors and instead solely benefited ACAS.

would support finding that the New Matco Defendants "knowingly" aided or abetted the ACAS Defendants, the differences in the "knowing" requirement for each of the three claims do not require substantial consideration.

### B. The Trustee Has Failed To Support His Claim on the ACAS Letter of Credit

The Court finds the Trustee has waived his claim based on the ACAS letter of credit. As stated above, the Trustee has failed to address this claim upon summary judgment. Because the Trustee would carry the burden of proof on this claim at trial, the Court must grant summary judgment to the New Matco Defendants. The Trustee's failure to mention this claim, fully explain the legal theory behind this claim, introduce evidence in support of this claim and connect that evidence to his legal argument render any further consideration pointless. Not only is there a "absence of evidence in support of an essential element" of this claim, there is a lack of explanation on what the essential elements of this claim are.

### C. The Trustee's Aiding and Abetting Claims Related to the Sale of Old Matco Wholly Lack Evidence

The Trustee's aiding and abetting claims fail for a simple reason—the Trustee has failed to produce any evidence that would support a finding that the New Matco Defendants "aided" or "abetted" a breach of fiduciary duty committed by the ACAS Defendants in sale of Old Matco. As the Court noted at the outset, aiding and abetting requires more than mere "facilitation." The Trustee has totally failed to present evidence of direct knowledge or constructive knowledge by the New Matco Defendants that the ACAS Defendants were breaching their fiduciary duties.

30

In support of his aiding and abetting claims, the Trustee first asserts, in direct contradiction of the record, that the New Matco Defendants acted deceptively towards Citizens and its consultant.[100]    The Trustee bases this assertion on two pieces of "evidence."    First, the Trustee effectively argues that because we know, ex-post, that New Matco is worth far more than $2 million paid for Old Matco, Citizens "must" have been misled about its worth at the time of the sale.    This is the sort of inference condemned at the pleading stage, and expressly found irrelevant by this Court in 2013.[101]    It therefore requires no further consideration from the Court.    Second, the Trustee asserts that "Barber *repeatedly* downplayed Old Matco's value going forward."[102]    In support of this assertion, the Trustee offers a single citation to the record—which makes the Trustee's use of the word "repeatedly" somewhat boggling. Finally, this single piece of evidence is hearsay and the Trustee has failed to show that any hearsay exception applies.    Inadmissible evidence cannot create a genuine dispute of material fact.[103]    The Court therefore finds a total lack of evidence in support of the Trustee's interpretation of this material fact.

---

[100]    *E.g., Trustee's MSJ Brief* at p. 35 (stating "if they [the New Matco Defendants] had been forthright, the Bank would not have been shocked to learn in discovery the truth of Old Matco's financial strength").

[101]    *In re NewStarcom Holdings,* 514 B.R. at 404.

[102]    *Trustee's MSJ Brief* at p. 35 (emphasis added).

[103]    *Countryside Oil Co. v. Travelers Ins. Co.,* 928 F. Supp. 474, 482 (D.N.J. 1995) ("It is well settled that only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment"); *see also Pamintuan v. Nanticoke Mem'l Hosp.,* 192 F.3d 378, 387 (3d Cir. 1999); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.,* 998 F.2d 1224, 1235, n.9 (3d Cir. 1993) (hearsay may be considered on a motion for summary judgment if it is capable of being admissible at trial).    It is not the Court's job to, *sua sponte,* determine if a hearsay exception applies.    Because the Trustee has failed to show that this hearsay testimony falls within an exception, it is not admissible.

The single quotation the Trustee offers in support of his assertion is from an email in which Citizens' workout officer, Christine Butler, states that "Old Namco was around [$10 million] in revenue and Barber talked about *going back* to that level several times *and not doing bonded projects*."[104]   This is paradigmatic hearsay; Butler, in emailing another person, was recounting Barber's statement.  The Court also finds it necessary to point out that this offers no direct evidence that Freije or Elliot mislead Citizens.

The Court finds that Barber's alleged statement, even if deemed admissible, cannot support the Trustee's assertion.  First, Barber's statement expresses no opinion on what valuation Old Matco had as a going concern in the fourth quarter of 2007—Barber was expressing a possible future path for New Matco, at which time Citizens would not even be involved.  Moreover, there is no evidence that Barber claimed this was the only possible path forward for New Matco, or that New Matco's current operations were unsustainable.   Simply put, it severely strains credulity to infer that this single statement could mislead Citizens, a sophisticated financial institution and investor.

The Court also notes that the Trustee bases his valuation model on EBITDA, not gross revenue.[105]  Old Matco's gross revenue the year before the sale was $33.6 million. Even if the Court assumes that non-bonded work is no more profitable than bonded work, Barber's statement implies an EBITDA of approximately $800,000 and a valuation of at least $6 million, well north of the $2 million that the New Matco Defendants paid

---

[104]   *Trustee's MSJ Brief* at p. 35 (emphasis added).

[105]   *Id.* at pp. 1-9.

for Old Matco.[106]    Second, there is evidence in the record that Old Matco's most

profitable work was maintenance and upkeep[107] of electrical systems—the exact type of

*non-bonded work* that Barber's statement refers to.    The Trustee has offered no evidence

from which the Court could infer what EBITDA New Matco would have if it had only

performed non-bonded work.    Thus, the Court has no basis for concluding that New

Matco would be worth any less by exclusively performing lower revenue—but possibly

higher profitability—projects.

Finally, the record shows that Old Matco's books were entirely open to Citizens

prior to the sale.    There is no colorable evidence that the books were altered or

misleading.    Because the Trustee has failed to present any evidence that the New Matco

Defendants misled Citizens, summary judgment must be granted on this claim.

### D. There Is No Evidence The New Matco Defendants "Knowingly" Aided Or Abetted An Unlawful Sale

In his brief opposing summary judgment, the Trustee relies heavily on a specific

chain of logic in supporting these claims—the Trustee claims that (1) the ACAS

Defendants had clear conflicts of interest in regards to the sale, (2) the New Matco

Defendants knew of these conflicts and therefore (3) by purchasing Old Matco, the New

Matco Defendants aided and abetted the ACAS Defendants.[108]    These formulaic

arguments, too, are unpersuasive, because even if the Trustee had successfully shown

the New Matco Defendants' actions aided or abetted the ACAS Defendants in

---

[106]  It would be a strange use of the English language to say that Barber "misled" Citizens into accepting $2 million for Old Matco by telling Citizens that Old Matco was worth $6 million.

[107]  *Trustee's MSJ Brief* at p. 4.

[108]  *Id.* at pp. 31-34, 41-42, 43-46 (three separate arguments based on this logic).

conducting an unlawful sale, the Trustee has failed to point to any evidence from which the Court may infer they did so "knowingly."

The Trustee has not presented any evidence that the New Matco Defendants knew how the ACAS Defendants had behaved in the months leading up to October 2007. Second, the Trustee has presented no evidence the New Matco Defendants knew how the ACAS Defendants had represented the financial condition of Old Matco to Citizens. Third, the Trustee's various arguments that the New Matco Defendants "knowingly" aided and abetted the ACAS Defendants either lack evidence or do not rise to the "knowing" level required by law.[109]

The Court finds itself quite frustrated by the Trustee's arguments. His modus operandi is clear—seize one or two indisputable, but relatively innocuous facts, use those facts to make an enormous inferential leap without any other evidence to support that leap, and then assert that the New Matco Defendants obviously "knew" and participated in the actions of the ACAS Defendants. Not once does the Trustee compare this case directly to precedent to demonstrate his leap is warranted or should be accepted for the purposes of summary judgment. Not once does the Trustee substantively discuss the "knowing" requirement of aiding and abetting claims.

---

[109] Even if the New Matco Defendants knew that the ACAS Defendants had a conflict of interest regarding the sale of Old Matco, that knowledge—alone—does not mean the New Matco Defendant "knowingly" aided or abetted a breach of fiduciary duty. In fact, the New Matco Defendants could easily have reasoned that these conflicts of interest are why the ACAS Defendants left sale negotiations to Citizens, the conflict-less, true party-in-interest.

### 1. Agreeing to purchase Old Matco at "liquidation value" does not demonstrate the "knowing" requirement of aiding and abetting.

First, the Trustee claims that "by agreeing to purchase Old Matco for a liquidation price that they knew was inappropriate for a profitable going concern, Old Matco's officers aided the ACAS Defendants' breach."[110]   His claim is that the price was so outrageously low, the New Matco Defendants must have know they were aiding and abetting a breach.  This claim plainly fails.

Second, the Trustee repeatedly references the fact that Old Matco's bank account, at that time, held approximately $2 million in cash.[111]  This too, is no evidence that the sale price was improper—as the Trustee repeatedly emphasizes, Old Matco was required to hold funds in trust for payment to its contractors and vendors.  Citizens would have violated New York Lien Law if it attempted to foreclose on that cash.  CNA would also likely have had priority over that $2 million if Old Matco failed.[112]  Citizens received $2 million in unencumbered cash in exchange for an account that, to Citizens, had absolutely no value.

Third, the Trustee continuously references the underlying fundamentals of Old Matco to support this conclusion.[113]  This provides no support.  This Court has already definitively stated that the Trustee's claims must be based on the process that led to the

---

[110]  *Trustee MSJ Brief* at p. 33.

[111]  *Id.* at p. 34.

[112]  By virtue of its right to subrogation if Old Matco failed to perform.

[113]  *Id.* at p. 34, n. 27.

sale of Old Matco, and not on the price itself.[114]  Moreover, there is no question that Old Matco's fundamentals were solid, and Citizens knew this when they agreed to the sale. Old Matco experienced a liquidity crisis that prompted the sale, and Citizens only began unconditional forbearance after Barber approached it about purchasing Old Matco.

Finally, there is no question that Old Matco had been inches from complete collapse, until Barber *unilaterally* agreed, *during negotiations leading up to the sale*, to give a personal guarantee to CNA so that CNA would continue paying vendor and employee claims.  The Trustee may be able to prove that it was entirely the fault of the ACAS Directors that Old Matco had reached such a point.  He may be able to prove this was a breach of their fiduciary duties.  But there is literally no evidence that "if there was a fire, the ACAS Defendants started it with the New Matco Defendants' help."[115]  The Trustee's own arguments show the *exact opposite*: Old Matco was profitable and cash-flow positive because Barber, Freije and Elliot had astutely managed it for years.[116] Moreover, although the Trustee's assertion that "any perceived emergency had abated by late November"[117] has some truth to it, this ignores the fact that it was Barber's unilateral actions that abated the emergency.  By October, nobody—including Citizens

---

[114]  *In re NewStarcom Holdings,* 514 B.R. at 404.

[115]  *Id.*

[116]  The Trustee may be arguing that the New Matco Defendants "helped" by virtue of not blowing the whistle when the ACAS Defendants upstreamed cash in violation of New York Lien Law.  This totally ignores the fact that the ACAS Defendants' upstreaming was not the cause of Old Matco's liquidity crisis—it was Citizen's collection of effectively all of Old Matco's cash that caused the liquidity crisis.  *New Matco MSJ Brief* at pp. 9-10.

[117]  *Id.*

and CNA—other than Barber was willing to put in the cash necessary to keep Old Matco running. The Court therefore finds that the sale price of Old Matco did not provide constructive knowledge that the ACAS Defendants were committing a breach of fiduciary duty.

### 2. Bargaining directly with Citizens does not demonstrate the "knowing" requirement of aiding and abetting.

The Trustee further claims that "the New Matco Defendants knew that the ACAS Defendants refused even to participate in the sale price negotiation because they did not care whether Old Matco was sold for a fraction of its true value."[118] The Trustee's entire basis for this assertion is (1) the Board planned on shutting down Old Matco before Barber sought to purchase it and (2) Moore went on vacation instead being actively involved in the sale process. From these two facts, the Trustee makes a huge inferential leap that by bargaining directly with Citizens—the only real party in interest to the sale—the New Matco Defendants "aided" or "abetted" the ACAS Defendants. The Court cannot accept this inference, even upon the deferential standard of summary judgment.

Even if the Court could accept the Trustee's inferential leap, the Trustee has still failed to meet the "knowing" requirement for his claims—he has failed to show actual or constructive knowledge by the New Matco Defendants that the ACAS Defendants were breaching their fiduciary duties by abdicating the sale process to Citizens. Citizens, as the sole secured creditor, was the real party in interest on the selling side of

---

[118] *See Trustee's MSJ Brief* at p. 44.

Old Matco.  Barber was directed, by the Director Defendants, to negotiate with Citizens for this *exact reason*.  Moreover, the Director Defendants did, late in the sale process, step back in and require additional terms from the New Matco Defendants.  Finally, Barber, Freije and Elliot were the managers of an electrical contractor, not investment bankers or financial consultants.  If a private equity group had bought Old Matco, it would be reasonable to say they had constructive knowledge the sale was tainted by the fact the ACAS Defendants barely participated.  But there are no grounds for holding that the New Matco Defendants had such constructive knowledge.

### 3. Knowing that the ACAS Defendants had violated New York Lien Law does not demonstrate the "knowing" requirement for aiding and abetting.

The Trustee also asserts that the New Matco Defendants knew that the ACAS Directors had a conflict of interest and that this conflict motivated the sale process.[119] Again, the Trustee's asserts absolutely fail to meet the "knowing" standard required for an aiding and abetting claim.  The Trustee takes a single fact—that the New Matco Defendants knew that the upstreaming of cash from Old Matco violated New York Lien Law—and then makes outrageous and unsupported inferences from it.  The Trustee's argument that the ACAS Defendants were hoping to hide their violations of New York Lien Law by selling Old Matco is supported by, at best, a moderate amount of evidence. But there is absolutely no evidence that the New Matco Defendants were aware that this was motivating the ACAS Defendants.  And again, the New Matco Defendants negotiated, at arms-length, directly with Citizens.

---

[119]  *Id.* at p. 42.

### E. There Is No Evidence the New Matco Defendants "Aided or Abetted" the Sweeping of Old Matco's Accounts.

The Trustee also claims in the months leading up to the Debtors' bankruptcy, the ACAS Defendants violated their fiduciary duties by sweeping cash from Old Matco's accounts in violation of New York Lien Law.[120]   The Trustee further claims that New Matco Defendants "facilitate[ed]"[121] the unlawful sweeping of the ACAS Defendants and therefore are liable for aiding and abetting the ACAS Defendants.[122]   Because the Court finds no evidence that the Matco Defendants actually "aided" or "abetted" the ACAS Defendants' sweeping, or did so "knowingly," the Court will grant summary judgment on this claim.

First, the Court notes the Trustee may not have properly asserted this claim.  While the Trustee devotes significant space in his brief in arguing for this claim to survive summary judgment,[123] this claim was never asserted in the Trustee's complaint, and is not reasonably derived from one of the claims he did assert.[124]   The Trustee may effectively be amending his complaint five years after it was filed and asserting a new claim.  Because, however, the Court finds that summary judgment is clearly warranted

---

[120]   *Id.* at p. 9 (*citing* N.Y. Lien Law §§ 70-72, 79 (McKinney)).

[121]   *Id.* at p. 37.

[122]   The Court notes that this claim—that the sweeping of Old Matco's accounts was a breach of fiduciary duty—is not mentioned in the Trustee's Amended Complaint.  *See id.* at p. 20.  Because the Court finds that summary judgment should be granted, the Court does not reach the procedural question of whether this claim is improperly asserted or should be deemed waived.

[123]   *Id.* at pp. 36-39.

[124]   *Trustee's Amended Complaint* at p. 20.  The Trustee neither asserted a direct breach of fiduciary duty against the ACAS Defendants for violating New York Lien Law, nor an aiding and abetting claim against the New Matco Defendants.

on this claim, the Court finds it unnecessary to determine if this claim is improperly asserted.

The evidence clearly establishes that Barber, Freije and Elliott never exercised any measure of control over the finances of NewStarcom,[125] that NewStarcom never allowed them full control over Old Matco's accounts and they never had the authority to stop the sweeping of cash from Old Matco's accounts.[126]   The ACAS Defendants did not need the permission of the New Matco Defendants to conduct the sweeps.[127]   The Trustee has presented no evidence contradicting these facts, nor has he introduced evidence that the New Matco Defendants could have, by themselves, prevented ACAS from sweeping Old Matco's accounts.[128]   This lack of power is fatal to the Trustee's claim—how could the New Matco Defendants have "aided" or "abetted" the sweeping of Old Matco's accounts, when they had no power to prevent the sweeping?

To overcome this deficit of evidence, the Trustee offers another theory: that by not going to the New York authorities—whomever that may be—and telling them that the ACAS Defendants were violating NY Lien Law, the New Matco Defendants aided and

---

[125]   *New Matco MSJ Brief* at pp. 6-7; *Towery Affidavit* at ¶¶ 5, 6, 14; *Shapiro Declaration* at Exs. C, V.

[126]   *Id.*

[127]   The Trustee states that the New Matco Defendants "consented to operating Old Matco in this illegal fashion." *Trustee's MSJ Brief* at p. 39, n. 36.  "Consent" requires that the consenting party have the ability to say no.  In this context, NewStarcom's complete control over Old Matco's finances removed the Defendants' ability to consent long before New York law was violated.

[128]   The Trustee's interpretation of *Trenwick* is correct; *Trenwick* does not authorize the "fiduciaries of a subsidiary to comply with an illegal strategy of its parent…" *Trustee's Amended Brief* at p. 38. Nonetheless, this discussion misses the mark—*Trenwick* applies to situations where the subsidiary actually participates in the illegal strategy.  In this case, the New Matco Defendants did not "participate" in, or even "allow" the ACAS Defendants to sweep cash.  The ACAS Defendants simply swept the cash, leaving Barber, Freije and Elliott to deal with the operational consequences at Old Matco that followed.

abetted the ACAS Defendants.[129]  While a failure to act can certainly constitute a breach of a party's duties, that is not the relevant question here.  The question here is whether a failure to act constitutes "aiding and abetting," and the Trustee has offered no precedent or authority for such a holding.  "Aiding and abetting," by definition, implies active participation or affirmative action.  The Trustee's own phrasing implicitly acknowledges this.[130]  While it is possible that the New Matco Defendants breached their own duties to Old Matco by failing to go to the authorities, the Trustee cannot assert the claims of Old Matco.  Because the Trustee offers no authority for such a broad definition of aiding and abetting, the Court will grant summary judgment on this claim.

## IV. **The Trustee's Motion for Reconsideration Will Be Denied**

This Court previously dismissed four claims, brought by the Trustee, that alleged that the sale of Old Matco to the New Matco Defendants was an avoidable transfer under both Delaware law and the Bankruptcy Code.[131]  The Trustee now moves for reconsideration of the Court's order dismissing those claims on two grounds.  First, the Trustee asserts that the New Matco Defendants withheld responsive documents during the Trustee's Rule 2004 discovery and that, but for New Matco's failure to produce said documents, the Trustee would have properly alleged an avoidable transfer.[132]  Second,

---

[129]  *See Trustee's Amended Brief* at p. 39, n. 36 (stating that the New Matco Defendants "facilitated the illegal sweep by remaining quiet, failing to maintain the requisite books and records, and by refusing to avail themselves of… legal mechanisms").  The Trustee offers no evidence to support his assertion that the New Matco Defendants failed to maintain their books and records.

[130]  Most clearly, the Trustee's use of numerous terms other than "aiding and abetting."  *E.g.* "facilitate" (pp. 37, 39), "consent" (p. 39).

[131]  *Trustee's Amended Complaint* at pp. 23-26, ¶¶ 101-126.

[132]  *Trustee's Reconsideration Brief*, D.I. 167, pp. 1-2.

the Trustee argues that the New Matco and ACAS Defendants misled both the Court and the Trustee, and, therefore, reconsideration is necessary to prevent manifest injustice.[133]

The Court must deny the Motion for Reconsideration. First, a motion for reconsideration is an extraordinary means of relief, made more extraordinary by the Trustee's three year delay in seeking relief. Second, the New Matco Defendants have shown that they did not withhold any critical documents during the Trustee's initial Rule 2004 discovery requests. Third, the Court finds no basis in fact for the Trustee's claims that the Defendants misled the Trustee or the Court.

Instead, careful review of the record makes two facts clear. First, the Trustee and his attorneys failed to adequately review New Matco's initial productions and, as a result, failed to specifically allege a fraudulent transfer claim that would likely have survived the Defendants' motions to dismiss. Second, the New Matco and ACAS Defendants took no action to correct the Trustee's mistakes. The Defendants, however, were under no duty to do the Trustee's job for him. They did not, as the Trustee wildly alleges, "violate their duties of candor," "ma[ke] false statements under oath," "mis[lead] the court" or "misrepresent" the sale transaction and the Court sees no reason that they "should be sanctioned" for smart and careful lawyering.[134] The Court believes it would constitute manifest injustice for it to *grant* this motion for reconsideration, simply because, after three years, the Trustee and his attorneys finally did the work necessary

---

[133] *Trustee's Reconsideration Reply Brief*, D.I. 189, pp. 1-5.

[134] *Id*.

to understand the entire sale transaction and now regret their failure to properly allege an avoidable transfer in 2012. Reconsideration will be denied.

### A. Standard for Reconsideration of an Interlocutory Order

The Trustee seeks reconsideration of this Court's interlocutory order under Fed.R.Civ.P. 54(b). The Court applies the standard applicable to a Rule 59(e) motion, but places a slightly lesser burden of persuasion on the movant.[135] This Court has previously emphasized that "[a] motion for reconsideration is an extraordinary means of relief"[136] and therefore the movant must prove one of three extraordinary grounds before reconsideration is justified: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error [of law] or prevent manifest injustice."[137] In practice, the movant must point to "controlling decisions or data… that might reasonably be expected to alter the conclusion reached by the Court."[138] The Court may deny a motion for reconsideration if it is unreasonably late and thereby prejudices the opposing party.[139]

---

[135] *See Calyon New York Branch v. Am. Home Mortgage Corp.*, 383 B.R. 585 (Bankr. D. Del. 2008).

[136] *Id.* at 589 (quoting *HHCA Texas Health Servs., L.P. v. LHS Holdings, Inc. (In re Home Health Corp. of Amer., Inc.)*, 268 B.R. 74, 76 (Bankr. D. Del. 2001)).

[137] *Id.* (quoting *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)).

[138] *Id.* (quoting *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 123 (2d Cir.2003)).

[139] *See Standard Quimica De Venezuela v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202, 205 (D.P.R. 1999); *In re Diet Drugs Prod. Liab. Litig.*, 383 F. App'x 242, 246 (3d Cir. 2010).

B. **What Transfer Is the Trustee Now Hoping to Avoid**?

The structure of the Old Matco sale transaction is complex, but consisted of three major parts. First, Old Matco directly sold its assets to New Matco (the "*Asset Sale*").[140] Second, the "New Matco Stock Trust" was created, with its formation documents naming New Matco as the sole beneficiary of the Trust.[141] Third, NHI transferred its 100% equity stake in Old Matco to the New Matco Stock Trust in exchange for $1 (the "*Stock Transfer*").[142]

The Trustee now alleges that the Stock Transfer was a fraudulent transfer that is avoidable under the Bankruptcy Code.[143] The merits of that allegation are not the subject of this decision. The Trustee further argues that the Court's 2012 Order dismissed this claim, and that reconsideration of that order is warranted.[144] The Court notes—without passing official judgment—that if the Court did not dismiss this claim in 2012, statutory limitations on the Trustee's avoiding powers may bar him from now bringing this claim.[145]

C. **In 2012, the Trustee Was Attempting to Avoid an Entirely Different Portion of the Old Matco Sale Transaction.**

The Court's review of the transcript of the June 12, 2012 hearing and the Defendants' briefings makes two facts clear: (1) in 2012, the Trustee only asserted fraudulent transfer

---

[140] *Trustee's Reconsideration Brief* at pp. 5-6. The Court's use of the term "first" is not meant to indicate first in time, but merely to sequence the Court's summary.

[141] *Id.*

[142] *Id.*

[143] *Id.* at pp. 1-3.

[144] *Id.*

[145] *See* 11 U.S.C. § 546(a).

claims based on the Asset Sale and (2) the Defendants and their attorneys committed no ethical breaches in arguing that the Court should dismiss those claims.[146]  The Trustee's statements and arguments at the 2012 hearing make clear that the Trustee's fraudulent transfer claims did not include NSC's transfer to the Matco Stock Trust.[147]  Instead, the Trustee focused entirely on whether he could challenge Old Matco's sale of its assets to New Matco.[148]  The Trustee's primary argument at the hearing was that the estate inherited Old Matco's fraudulent transfer claims after Old Matco dissolved.[149]  The Court agreed with Ms. Shapiro that the text of the Code unambiguously contradicted the Trustee's argument.[150]  The Court further found that although it was possible the estate could have inherited Old Matco's state law fraudulent transfer claims, the Trustee had (1) not properly plead those state law claims and (2) had not met the requirements for asserting a derivative or successor state law claim.[151]  Not once did the Trustee

---

[146]  The Matco Defendants were always precise in their statements.  *E.g.,* "Because the *asset sale by Old Matco* did not involve the transfer of any assets of a debtor…" "None of *these sales* [referring to the Asset Sale] involved the transfer of any assets *by a debtor*…" *Trustee's Reconsideration Brief* at p. 4 (*quoting ACAS Motion to Dismiss Brief,* D.I. 50, at pp. 19, 10, respectively (emphasis added)).

[147]  "The Code doesn't say that the Debtor must transfer property.  It is a transfer of property in which the Debtor has an interest.  And it can be a transfer by a third party…" *Dismissal Hearing* at p. 37, lns. 11-14 (arguing that the Trustee could avoid the sale of Old Matco's **assets**).

[148]  "[T]he only one who can pursue the claims on behalf of old Matco, since it has been dissolved, is the shareholder that happens to be the Debtor…" *Dismissal Hearing* at p. 34, lns. 17-20 (again arguing that the Asset Sale could be avoided by the Trustee).

[149]  *Id.* at p. 38, lns. 4-10.

[150]  *Id.* at pp. 55-56, lns. 18-25, 1-8 (which specifically requires the transfer of an interest of the *debtor* in property).

[151]  *Id.* at pp. 58-59.

mention NHI's transfer of its 100% equity interest in Old Matco to the Matco Stock Trust.[152]

The Court agrees with the summary Ms. Shapiro made at the time—"[i]t's completely clear from the complaint that what's being alleged [by the Trustee] is the transfer of assets of old Matco [was fraudulent]."[153]  Ms. Shapiro's arguments and responses at the hearing were always circumscribed to the narrow question of whether New Matco's purchase of the physical property and intangible assets of Old Matco constituted a fraudulent transfer under § 11 U.S.C. § 548.[154]  The Court sought and found an answer to that question.[155]  Ms. Shapiro and the Defendants had no duty to tell the Trustee that he had focused on the wrong portion of the sale transaction. Because the Trustee did not assert the specific fraudulent transfer claim he now wishes to bring, the Court never dismissed this specific claim.

### D.  The Trustee Has Failed to Show Cause for Reconsideration

Even if the Court's 2012 Order did dismiss the Trustee's claim,[156] nothing warrants reconsideration of that dismissal.  Although the Trustee claims that "new evidence" withheld by the Defendants lead to the Trustee's "discovery" of this part of the sale transaction, the Defendants have demonstrated that their initial disclosures included documents detailing every portion of the Old Matco sale, including the transfer of

---

[152]  *Id*. at pp. 1-64.

[153]  *Id*. at pp. 29, lns. 20-22.

[154]  *Id*. at p. 29, lns. 1-20.

[155]  *Id*. at p. 55, lns. 5-7.

[156]  Adv. No. 10-50063, D.I. 71.

NSC's equity.[157]   As a result, the Trustee's new evidence argument does not provide grounds for reconsideration.[158]   The Trustee's reply brief offers no response to this clear summary of the record, but instead pivots from the Trustee's "new evidence" argument to an argument that the Defendants mislead the Court in 2012.[159]   As previously explained, the Court finds no evidence of deception or misdirection—Ms. Shapiro and the New Matco Defendants simply disclosed the documents requested by the Trustee and let the Trustee make his own legal arguments based on those documents.

Further, the Court believes reconsideration would greatly prejudice the New Matco Defendants.  The addition of the Trustee's new fraudulent transfer claim would likely require discovery to be reopened, and a new party be named as an additional defendant.  If the Trustee were successful on his claim, an entirely new, and complex, question of damages would arise; because Old Matco was a shell entity that merely held contracts that could not be assigned to New Matco, the parties would need to argue and brief a number of new questions of law, in particular how the proceeds of those contracts should be divided between Old Matco—the contracting party—and New Matco—the performing party.  These new issues would, in turn, require even more discovery.  Finally, adjudicating these questions would elongate this case—which is finally nearing its conclusion five years after being filed—by an uncertain, but likely

---

[157] *New Matco Reconsideration Brief*, D.I. 178 at pp. 12-13 (showing that New Matco's 2009 production included (1) the NSC resolution approving the stock transfer, (2) the Letter of Intent, which detailed the stock transfer and (3) the Stock Purchase agreement).

[158] *See Frito-Lay of Puerto Rico, Inc. v. Canas*, 92 F.R.D. 384, 391 (D.P.R. 1981); *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers*, 894 F. Supp. 2d 288, 339 (S.D.N.Y. 2012).

[159] *Trustee's Reconsideration Reply Brief* at pp. 5-8.

substantial, period of time.  Because the Trustee's delay was not the result of the New Matco Defendants' withholding of evidence, this prejudice is unacceptable and reconsideration is not warranted.

## V. **The Trustee's Motion to Take Judicial Notice Will Be Granted**

The Court will take judicial notice of the Debtors' ("Schedules") and statements of financial affairs ("*SOFAs*").  FRE 201(c)(2) states that the Court must take judicial notice of an adjudicative fact "if a party requests it and the court is supplied with the necessary information."  An adjudicative fact is not a "material fact," but simply any fact "which relate[s] to the parties."[160]  The Court understands adjudicative facts to be any admissible evidence "that normally go[es] to the jury in a jury case."[161]  The Debtors' Schedules and SOFAs are admissible evidence that a jury could consider. Because there is no reasonable dispute that the Debtors filed these schedules and SOFAs, the Court must take judicial notice of them under Federal Rule of Evidence 201(c)(2).

However, the taking of judicial notice of the Debtors' Schedules and SOFAs does not establish as fact any of the information or attestations within them.  The Debtors' Schedules and SOFAs state that Ron Barber was an officer of NSC Holdings, Inc.  The Court is not taking judicial notice of that attestation's truth or veracity; only that the Schedules and SOFAs attest to it.  Mr. Barber did not sign the Schedules and SOFAs and their contents do not bind him.  As fully explained in the Court's holding on the New

---

[160] *Commentary* to F.R.E. 201.

[161] *Id.*

48

Matco motion for summary judgment, this single piece of evidence is insufficient to create a triable issue of fact on whether Barber owed the fiduciary duties of a director to any of the Debtors.

## VI. The ACAS Defendants' Motion To Strike Will Be Granted, In Part, And Denied, In Part

The Court will grant, in part, and deny, in part, the ACAS Defendants' Motion to Strike. Federal Rule of Evidence 704 was created to allow experts to testify in the clearest terms possible, even if those terms have specific legal meaning or "embrace an ultimate issue." So long as an expert does not usurp the Court role in determining the law of the case, the intermittent use of legal terms is not grounds for excluding testimony.

First, because the "Executive Summary" section of the Brownstein Company's Report presents "legal" conclusions without first creating any factual context for those conclusions, the Court holds that it should be stricken. Second, even though the "Analysis and Opinion" section of the Report overuses "legal" terminology, the Court finds that striking this section of the Report would be improper. Although striking might be warranted in a jury trial, the Court is sitting as trier-of-fact in this adversary proceeding, and is fully capable of looking past the semantics of the Report and to its substance. Finally, because the remainder of the Report presents relevant, admissible testimony and analysis, does not attempt to explain Delaware Law or conduct legal analysis and grounds its "legal" conclusions in factual citation to the record, the Court will deny the Motion to Strike as to the remainder of the Report.

### A.  When May, and When Must, the Court Strike an Expert's Testimony?

The decision to strike expert testimony is a delicate one and, like most evidentiary rulings, involves a balancing of competing goals.  On the one hand, the Federal Rules of Evidence "embody a strong preference for admitting any evidence that may assist the trier of fact, and take a liberal policy of admissibility with respect to expert testimony."[162]  Valuation evidence is of particular importance in determining whether an asset was sold below its fair market value, and therefore in determining whether a fiduciary breached his duties by agreed to such a sale.[163]  The more valuable specific evidence is in assisting the trier-of-fact, the greater the burden is in excluding that evidence.[164]

On the other hand, "the Federal Rules do not permit experts to testify as to legal conclusions."[165]  More specifically, an expert may not testify as to "whether [a defendant] breached their fiduciary duties."[166]  The Court can strike the entirety of an expert report when a significant portion of it constitutes improper legal analysis and conclusions.[167]

---

[162] *In re DVL Inc. Sec. Litig.,* 2010 WL 3522090, at *8 (E.D. Pa. Sept. 3, 2010) (quoting *Pineda v. Ford Motor Co.,* 520 F.3d 237,243 (3d Cir. 2008) (internal quotations omitted)).

[163] *Cf. Hanson Trust P LC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 280-81 (2d Cir. 1986).

[164] *See In re Heckmann Corp. Sec. Litig.,* 2013 WL 2456104, at *7 (D. Del. June 6, 2013); *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997).

[165] *Berckeley Inv. Gr. Ltd. v. Colkitt,* 455 F. 3d 159, 217 (3d Cir. 2006).

[166] *Cantor v. Perelman,* 2006 WL 3462596, at *3 (D. Del. Nov. 30, 2006) (quoting *Berckeley Inv. Gr.,* 455 F.3d at 217).

[167] *Penn Mut. Life Ins. Co. v. Norma Espeinosa 2007-1 Ins. Trust*, 2014 WL 4811879, at *5 (D. Del. Sept 29, 2014).

### B. It Would Be an Inappropriate Exercise of Discretion to Strike the Expert Report in Full

The ACAS Defendants fail to show that the Court must or should strike the report in its entirety.  The ACAS Defendants state that "conclusions of law dominate the entire report,"[168] yet every specific citation of "improper legal conclusions" by the ACAS Defendants is to one of three areas in the report:  the Executive Summary (p. 1-7), the Analysis & Opinion (p. 81-95), and the discussion of New York Lien Law (p. 22-23).  Some sixty pages of the report lack any improper legal conclusions.  Those pages are not "'merely reformulations' of the same underlying conclusion,"[169] but contain detailed financial modeling and analysis, explanation of the Debtors' corporate structure, a thorough timeline and over two hundred citations to the record.

The Court agrees with the Trustee that "intermittent legal gloss" is insufficient to strike the entirety of an expert's report.[170]  After reviewing the Report, the Court also agrees with the Trustee that while the Report contains "conclusions of law," it does not attempt to explain Delaware law or conduct legal analysis.[171]  The Trustee's invocation of *Cantor* is the correct one; when an expert uses legal terminology or makes legal conclusions in a bench trial, the Court should simply ignore the conclusory language.[172]

---

[168]   *ACAS Motion to Strike Brief*, D.I. 174, p. 6.

[169]   *Id.* at p. 13 (*quoting In re Walt Disney Co. Derivative Litigation,* 2004 WL 550750, at* 1 (Del. Ch. Mar. 9, 2004)).

[170]   *Trustee's Motion to Strike Reply*, D.I. 177, p. 6.

[171]   *Id.* at p. 7.

[172]   *Id.* at p. 8 (citing *Cantor v. Perelman,* 2006 WL 3462596 at *5).

When an expert attempts to offer a full legal opinion or interpretation of law, however, his testimony should be struck in its entirety.[173]

The Court's inclusion of this report would be of much greater concern in a jury trial, where the Report's legal conclusions might usurp the jury's role.  Here, however, the Court is sitting as the trier of fact and will not be misled or confused by the Report's use of legal language.  And that is exactly what the Court should do; consider the 70+ pages of relevant analysis and ignore the less than dozen pages that include any legalistic language whatsoever.  There is no jury here and the Court's gatekeeper role is significantly reduced.[174]  The Court can simply disregard the inadmissible portions of the Report.[175]

### C.  The Court's Course of Action Moving Forward

The Court exercises its discretion like a scalpel, not a mallet, and therefore the motion to strike will be granted, in part, and denied, in part.  The "Executive Summary" (p. 5-7) of the Report will be stricken completely; there is no doubt these pages are rife with improper "legal" conclusions and because these conclusions precede the Expert's analysis and fact citations, striking them from the report does not reduce the Report's value in assisting the Court as trier-of-fact.

With regard to the remaining portions of the report, the motion to strike is denied. The "Opinion & Analysis" section of the Report, while often stating legal conclusions, is

---

[173]  *Id.* at p. 8 (citing *Cantor v. Perelman,* 2006 WL 3462596 at *3).

[174]  *Window Specialists, Inc. v. Forney Enterprises, Inc.,* 47 F.Supp.3d 53, 60 (D. D.C. 2014).

[175]  *Nodoushani v. S. Conn. State Univ.,* 507 F. App'x 79, 80 (2nd Cir. 2013).

a factual narrative and those "legal conclusions" are made solely in reference to the facts, as found by the expert.  In term of substantive legal analysis, the Report does not go any further than differentiating between the duty of care and the duty of loyalty.[176] The Court is fully capable of looking past the semantics of the Report and focus on the substance of the analysis performed by the Brownstein Company.  As a result, the motion to strike will be denied as to the remainder of the Report.

## CONCLUSION

Summary Judgment will be entered in favor of the New Matco Defendants on all claims asserted against them.  The Trustee has failed to refine the broad claims of his complaint into specific claims based on the facts in evidence.  To the extent he has, there is a lack of evidence on one or more necessary elements in each and every claim.  The Trustee's breach of fiduciary duty claims fail because they do not recognize the distinction between the fiduciary duties of the New Matco Defendants and the duties of the ACAS Defendants.  The Trustee's aiding and abetting claims fail because the Trustee has pointed to no evidence sufficient to show at trial that the New Match Defendants "knowingly" aided and abetted the ACAS Defendants.  Finally, the Trustee's failure to acknowledge the factual context of his claims against the ACAS Defendants renders most of his inferences so implausible that they cannot be accepted

---

[176] In regards to the Report opining on New York Lien Law, the Court finds no significant issue.  It is effectively undisputed that in the months leading up to the sale of Old Matco, New York Lien Law was continuously violated—at certain points Old Matco had a negative balance in its bank accounts, but had ongoing trust fund liabilities to subcontractors and vendors.  F.R.E. 704 was designed to end the days when experts were required to use "odd verbal circumlocutions" in order to state a clear fact in non-legal terms.

by the Court, even at summary judgment, when all reasonable inferences must be drawn in his favor.

The motion to take judicial notice will be granted.  The Schedules and SOFAs of the Debtors clearly fall within the range of uncontested documents which the Court should take judicial notice of upon request by a party.   However, the contents of those Schedules and SOFAs do not become fact.

The motion to strike will be granted, in part, and denied, in part.  On the whole, the Brownstein Company's Expert Report presents relevant, admissible evidence.   The Report's overuse of legal terms would be of substantial concern at a jury trial, but that concern is greatly lessened when the Court is sitting as the trier-of-fact.  Because the Report does not attempt to define Delaware law or perform legal analysis, there is no reason for it to be struck in full from this adversary proceeding.

The motion for reconsideration will be denied.  The Court does not believe its 2012 Order dismissed the new claim asserted by the Trustee, and therefore reconsideration would not grant the relief the Trustee seeks.  Even if the Trustee's claim was dismissed, reconsideration is not warranted.   The Trustee has failed to show new evidence warrants reconsideration and the interests of justice, far from requiring reconsideration, weigh heavily against.   The Trustee's failure to properly and timely assert this fraudulent transfer claim is entirely result of his own doing.

An order will be entered.